UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIHAL EMBERTON,<br><br>  Plaintiff,<br><br>v.<br><br>SAN FRANCISCO CITY GOVERNMENT,<br><br>  Defendant. | Case No. 22-cv-05440-TSH<br><br>**ORDER RE: MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 15 |

## I. INTRODUCTION

Pending before the Court is Defendant San Francisco City Government's Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 15. Plaintiff Emberton filed an Opposition (ECF No. 17), and Defendant filed a Reply (ECF No. 18). The Court finds this matter suitable for disposition without oral argument and **VACATES** the February 16, 2023 hearing. *See* Civ. L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** in part and **DEFERS** in part the City's motion for the following reasons.[1]

## II. BACKGROUND

### A. Factual Background

Plaintiff Emberton is a resident of San Francisco. ECF No. 1-1 at 2. On or around September 11, 2017, San Francisco's Department of Building Inspection ("DBI") issued a Notice of Violation ("NOV") for property Emberton appears to own and hold as her residence. ECF No. 1-1 at 7-8; ECF No. 16-1. DBI alleged that Emberton needed to reduce the height of a fence on

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 5, 9.

the property or obtain a building permit. *Id.*

On or around October 11, 2017, Emberton submitted a building permit application with the San Francisco Planning Department ("Planning Department"). ECF No. 1-1 at 8. On or around July 30, 2019, the City of San Francisco granted Plaintiff a variance. *Id.*

On or around October 27, 2021, the Planning Department issued a Notice of Enforcement ("NOE") against Emberton alleging that she now needed to "[r]emove the trellis from the front setback" on her property because the arbor in the yard did not qualify as a permitted obstruction under San Francisco Planning Code § 136(c)(1). *Id.* at 8-9. On November 9, 2021, the Planning Department further advised that "[t]he arbor does not comply with the Planning Code requirements for a permitted obstruction under Sec 136, so a Variance is required if you wish to keep it on the front setback." ECF No. 1-1 at 9.

On November 24, 2021, the San Francisco Department of Public Works ("DPW") placed the permit process on hold, and on December 4, 2021, Emberton submitted a Minor Sidewalk Encroachment Permit Application. *Id.* at 10. On December 10, 2021, DPW advised that it was very unlikely that the structure as currently built could be approved under a Minor Sidewalk Encroachment Permit. *Id.* On January 13, 2022, DPW advised that Emberton's fence could remain if she reduced the height and made other changes, and that she needed to remove a cedar pergola and propane fire table from the right-of-way. *Id.* at 11. DPW advised that Emberton needed to obtain a DPW General Excavation permit to remove the gas line and pergola. *Id.* at 12.

**B.      Procedural Background**

On August 26, 2022, Emberton filed a lawsuit in San Francisco Superior Court against the San Francisco City Government ("the City"). ECF No. 1-1. Emberton alleges "44 causes of action including 18 violations of civil rights, 6 counts of fraud, 5 counts of discrimination, 7 counts of extortion, and 8 counts of abuse of power." *Id.* at 6. Emberton also alleges that the City "repeatedly violated 11 city codes and 20 city policies within the City General Plan," and that "these violations are ongoing." *Id.* Plaintiff's causes of action include the following: breach of contract; fraudulent misrepresentation; violations of the Fourth and Fourteenth Amendments; fraud (Cal. Civ. Code §§ 1565-1572); extortion (Cal. Penal Code § 518); violation of 18 U.S.C. §

2

1  242; violation of Cal. Civ. Code § 52.1 ("Bane Act"); discrimination claims pursuant to Title II of

2  the Civil Rights Act of 1964, 31 U.S.C. § 6711(a), and Cal. Civ. Code § 51(b) (the "Unruh Act");

3  violation of the San Francisco Campaign and Governmental Conduct Code § 3.400; violation of

4  the San Francisco Police Code §§ 3301, 3302, 3305; and violation of the United Nations

5  International Covenant on Civil and Political Rights ("ICCPR"). *Id.* at 8-14.

6        Emberton also filed a "supplemental pleading" in San Francisco Superior Court on August

7  23, 2022. ECF No. 8. This document was filed on ECF on October 3, 2022. *Id.*[2]

8        On or around September 22, 2022, Defendant filed an answer. ECF No. 1-2. On

9  September 23, 2022, Defendant removed the lawsuit to this Court. ECF No. 1.

10       On January 6, 2023, Defendant filed the instant motion, seeking dismissal of the vast

11 majority of Plaintiff's claims. ECF No. 15. On January 18, 2023, Emberton filed an opposition.

12 ECF No. 17. On January 27, 2023, Defendant filed a reply. ECF No. 18.

### III. LEGAL STANDARD

14       "After the pleadings are closed—but early enough not to delay trial—a party may move for

15 judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly

16 granted when, accepting all factual allegations in the complaint as true, there is no issue of

17 material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez*

18 *v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (brackets and internal quotation marks

19 omitted). Like a motion to dismiss under Rule 12(b)(6), a motion under Rule 12(c) challenges the

20 legal sufficiency of the claims asserted in the complaint. *Id.* Indeed, a Rule 12(c) motion is

---

[2] The August 23, 2022 supplemental pleading provides additional facts and includes a negligence claim, which was not alleged in the original Complaint. ECF No. 8. Under both California and federal law, a supplemental pleading is permitted, on motion, alleging facts material to the case occurring after the initial complaint. *See* C.C.P. § 464; Fed. R. Civ. P. 15(d). A party may also file an amended complaint, as of right, prior to a defendant filing an answer. *See* C.C.P § 472, Fed. R. Civ. P. 15(a)(1)(B). Under California and federal law, an amended complaint will be treated as superseding the prior complaint. *See Sylmar Air Conditioning v. Pueblo Contracting Servs., Inc.*, 122 Cal. App. 4th 1049, 1054 (2004); *Studio Carpenters Loc. Union No. 946 v. Loew's, Inc.*, 182 F.2d 168, 170 (9th Cir. 1950). It does not appear that Emberton intended for her filing to supersede her original complaint and serve as an amended pleading, but the document also is not limited to facts occurring after her initial filing and thus is not proper as a supplemental pleading. Because it does not meet the criteria for a supplemental or amended pleading, the Court will not consider the August 23, 2022 filing in its determination of this motion, nor deem her cause of action for negligence to be properly raised at this time.

"functionally identical" to a Rule 12(b)(6) motion, and courts apply the "same standard." *Dworkin v. Hustler Mag., Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (explaining that the "principal difference" between Rule 12(b)(6) and Rule 12(c) "is the timing of filing"); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).

Judgment on the pleadings should thus be entered when a complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(c) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

"If the Court determines that judgment on the pleadings is warranted, it must then decide whether to grant leave to amend." *Jackson v. CEVA Logistics*, No. 19-CV-07657-LHK, 2020 WL 6743915, at *3 (N.D. Cal. Nov. 17, 2020) (citing *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1135 (9th Cir. 2012)). "Dismissal without leave to amend is appropriate only when the Court is satisfied that an amendment could not cure the deficiency." *Harris*, 682 F.3d at 1135 (reversing district court's dismissal under Rule 12(c) because plaintiffs should have been given opportunity to amend).

## IV.   DISCUSSION

### A.   Judicial Notice

The City requests the Court take judicial notice of the following documents for purposes of its motion:

    1)    Department of Buildings Inspection Notice of Violation, dated September 11, 2017;

    2)    San Francisco Planning Notice of Enforcement, dated October 27, 2021;

4

|   |   |   |
|---|---|---|
| 3) | | San Francisco Public Works Application for Minor Sidewalk Encroachment Permit, dated December 4, 2021; |
| 4) | | Plaintiff's Claim Against the City and County of San Francisco, received on or around February 8, 2022; |
| 5) | | Plaintiff's Claim Against the City and County of San Francisco, received on or around June 21, 2022. |

ECF No. 16; Exs. A-E. Emberton has not contested Defendant's request.

"Generally, a court may not consider any material beyond the pleadings in ruling on a Rule 12(c) motion, but a 'court may consider facts that are contained in materials of which the court may take judicial notice.'" *Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 145 (N.D. Cal. 2020) (quoting *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999)). The Court may take judicial notice of matters that are (1) generally known within the trial court's territorial jurisdiction or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). The Court may also consider documents whose contents are alleged in the complaint, even if not attached, provided the complaint "necessarily relies" on the documents or contents thereof, the document's authenticity is uncontested, and the document's relevance is uncontested. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908.

The Court takes judicial notice of the five documents requested by the City, as the Complaint explicitly references all five documents, they are public records, and their authenticity is not disputed by Plaintiff. ECF No. 1-1 at 7, 8, 9, 10, 11. However, the Court declines to take judicial notice of any facts contained therein which are subject to dispute and instead relies on Emberton's allegations in analyzing the merits of the motion. *Khoja v. Orexigen Therapeutics,*

5

*Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("A court may take judicial notice of matters of public record [on a motion to dismiss]. . . . But a court cannot take judicial notice of disputed facts contained in such public records.") (quotations and citations omitted).

### B.     Federal Claims

#### 1.     Younger Doctrine

Defendant argues that, to the extent that the Court concludes that Plaintiff has pled viable federal causes of action, the Court should dismiss the case under the abstention doctrine of *Younger v. Harris*, 401 U.S. 37 (1971). ECF No. 15 at 23-26. Plaintiff argues that there is no "proceeding" within the definition of *Younger*. ECF No. 17 at 22.

"*Younger* abstention remains an extraordinary and narrow exception to the general rule that federal courts have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cook v. Harding*, 879 F.3d 1035, 1038 (9th Cir. 2018) (quotations and citations omitted). Under the *Younger* doctrine, federal courts should abstain from enjoining state proceedings in "three exceptional categories": "(1) 'parallel, pending state criminal proceeding[s],' (2) 'state civil proceedings that are akin to criminal prosecutions,' and (3) state civil proceedings that 'implicate a State's interest in enforcing the orders and judgments of its courts.'" *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 81 (2013)). "In civil cases, therefore, *Younger* abstention is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *Id*. Where these "threshold elements" are present, the federal court then determines "whether the federal action would have the practical effect of enjoining the state proceedings and whether an exception to *Younger* applies." *Id*.

The Court finds, based on the record before it, that the *Younger* abstention doctrine is inapplicable as there is no action "involv[ing] a state's interest in enforcing the orders and judgments of its courts" nor a "quasi-criminal enforcement action." *Id*. As to the former, there have been no orders or judgments from California courts. *See id.* (listing examples at "the core

6

of" California's court system, such as an appeal bond requirement). Regarding the latter, the Supreme Court has listed factors relevant to determining whether there is a "quasi-criminal enforcement action," such as whether the proceeding is initiated by the state to sanction the plaintiff for some wrongful act and whether there is an investigation "culminating in the filing of a formal complaint or charges." *Sprint*, 571 U.S. at 79-80. The Court finds the NOV and NOE processes lack a sufficiently formal proceeding, such as one in front of a hearing officer, state court, or zoning board, to appropriately categorize them as a quasi-criminal enforcement action. *Cf. Citizens for Free Speech, LLC v. Cnty. of Alameda*, 953 F.3d 655, 657 (9th Cir. 2020) (finding a quasi-criminal enforcement action in a nuisance abatement case and noting the action included notice to appear before a zoning board); *Herrera v. City of Palmdale*, 918 F.3d 1037, 1045 (9th Cir. 2019) (finding a nuisance abatement action to be quasi-criminal where the state obtained and executed an inspection warrant, issued a Notice and Order to Repair or Abate violations, and then initiated an action in state court for nuisance abatement and receivership); *Lutge v. Harrington*, No. 22-CV-00585-JST, 2022 WL 18401351, at *1 (N.D. Cal. Aug. 2, 2022) (determining that a code enforcement proceeding brought before an administrative hearing officer was sufficient for *Younger* abstention); *Sw. Reg'l Council of Carpenters v. City of Irvine*, No. 821CV00281JLSJDE, 2021 WL 6103550, at *4 (C.D. Cal. Oct. 13, 2021) (finding no enforcement proceeding in a zoning ordinance violation case because, in part, there was no indication that the next step in the city's "'ongoing proceeding' would be a complaint or charge or that enforcement would involve a hearing before any state or City administrative body."). Based on the information presented, Emberton has had a pending NOV for over five years, and there is no indication that the City has called her before a hearing officer or board regarding the NOV, NOE, or Minor Sidewalk Encroachment Permit. Without more, the Court cannot conclude at this juncture that there is a pending state proceeding upon which the Court would potentially infringe by hearing the current action.

### 2. Claims Pursuant to 42 U.S.C. § 1983

Emberton's Complaint does not refer to 42 U.S.C. § 1983. However, she alleges multiple constitutional violations and seeks $12,000,000 in damages. ECF No. 1-1 at 4. She further does

7

1  not appear to contest in her opposition that her claims are brought pursuant to the statute. ECF
2  No. 17 at 23-24. Therefore, the Court interprets Plaintiff's constitutional claims to be made
3  pursuant 42 U.S.C. § 1983. *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014)
4  (reversing dismissal of a claim against a municipality alleging violations of the Fourteenth
5  Amendment and seeking compensatory relief, finding it impermissibly strict to require pleadings
6  explicitly reference 42 U.S.C. § 1983).

7        42 U.S.C. § 1983 authorizes civil actions for the "deprivation of any rights . . . secured by
8  the Constitution and laws" against a party acting under color of state law. *See Monell v. Dep't of*
9  *Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). To establish municipal liability
10 pursuant to 42 U.S.C. § 1983 a plaintiff "must prove that (1) he was deprived of a constitutional
11 right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to
12 [Plaintiff's] constitutional right; and (4) the policy was the moving force behind the constitutional
13 violation." *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) (citing *Dougherty v.*
14 *City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)). "To establish an official policy that would
15 give rise to *Monell* liability, a plaintiff must allege facts to support one of the following to survive
16 dismissal of its claim: (1) an unconstitutional custom or policy behind the violation of rights; (2) a
17 deliberately indifferent omission, such as a failure to train or failure to have a needed policy; or (3)
18 a final policymaker's involvement in, or ratification of, the conduct underlying the violation of
19 rights." *King v. Alameda Cnty. Dep't of Child Support Servs.*, No. 21-CV-02839-SI, 2021 WL
20 2688823, at *2 (N.D. Cal. June 30, 2021) (citing *Clouthier v. Cnty. of Contra Costa*, 591 F.3d
21 1232, 1249-50 (9th Cir. 2010) (synthesizing authorities), *overruled on other grounds by Castro v.*
22 *Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016)).

23       **a.    Fourth Amendment Claim**
24       Emberton alleges that the City violated her Fourth Amendment rights by searching her
25 property and issuing building code violations. ECF No. 1-1 at 16.
26       The Fourth Amendment provides "[t]he right of the people to be secure in their persons,
27 houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and
28 no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. It is intended "to

8

safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Camera v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 528 (1967). "The officials may be health, fire, or building inspectors. . . . Their purpose may be to locate a suspected public nuisance, or simply to perform a routine periodic inspection." *Michigan v. Tyler*, 436 U.S. 499, 504 (1978). A seizure of property under the Fourth Amendment means taking possession. *See Torres v. Madrid*, 209 L. Ed. 2d 190 (2021) ("'[F]rom the time of the founding to the present, the word 'seizure' has meant a 'taking possession.''") (quoting *California v. Hodari D.*, 499 U.S. 621, 624 (1991)). Regarding a search, "[w]hen 'the Government obtains information by physically intruding' on persons, houses, papers, or effects, 'a "search" within the original meaning of the Fourth Amendment' has 'undoubtedly occurred.'" *Fla. v. Jardines*, 569 U.S. 1, 5 (2013) (quoting *United States v. Jones*, 565 U.S. 400, 407 n.3 (2012)).

The City argues that it issued code violations based on conditions observed from the public street, and thus no Fourth Amendment "search" of Emberton's property occurred. ECF No. 15 at 28. Plaintiff does not appear to contest this, but rather seems to allege that issuing violations based on conditions observed from the street is an unreasonable search. ECF No. 17 at 15. The law, however, does not support that conditions in front of a home readily observable by the public are conditions for which the government must acquire a warrant to observe. *See United States v. Perea-Rey*, 680 F.3d 1179, 1186 (9th Cir. 2012) ("Although a warrant is not required to observe readily visible items within the curtilage, and 'officers [need not] shield their eyes when passing by a home on public thoroughfares, a warrant is required to enter a home.'") (quoting *California v. Ciraolo*, 476 U.S. 207, 213 (1986)); *Patel v. City of Montclair*, 798 F.3d 895, 900 (9th Cir. 2015) ("[P]olice officers entering the public areas of the Galleria Motel are entitled to observe (without a warrant) anything observable by the public."); *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 315 (1978) ("What is observable by the public is observable, without a warrant, by the Government inspector as well."). If Plaintiff is alleging that the City engaged in additional conduct that could constitute a search, such as entering her property unlawfully, that is not clear from the pleadings.

Additionally, to the extent Plaintiff is arguing a "seizure" by the City for seeking deconstruction of her fence, demolition of her arbor, and excavation of her gas line (ECF No. 17 at

9

11), these allegations do not indicate a "meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 61 (1992) (quoting *United States v. Jacobsen,* 466 U.S. 109, 113 (1984)). These City determinations, assuming they were made, do not involve the degree of interference with Plaintiff's property necessary to indicate a Fourth Amendment seizure. *Cf. id.* (finding a "seizure" where government officials towed plaintiff's mobile home onto the street from the park where he lived); *Brewster v. Beck,* 859 F.3d 1194, 1195 (9th Cir. 2017) (impounding a vehicle for 30 days was a seizure of that vehicle).

In sum, Emberton has not alleged facts from which a plausible Fourth Amendment violation can be inferred.

### b. Equal Protection Claim

Emberton argues that the City's building code enforcement process violates her constitutional right to Equal Protection under the Fourteenth Amendment because the codes enforced against her are not being consistently enforced against other citizens, and the enforcement laws do not remain consistent over time. ECF No. 1-1 at 17.

Under the Equal Protection Clause of the Fourteenth Amendment: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (per curiam) (citations and quotations omitted). "When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a 'class of one' claim." *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) (citing *Willowbrook*, 528 U.S. at 564). In a "class of one" claim, the plaintiff "does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) (emphasis in original). "In order to claim a violation of equal protection in a class-of-one case, the plaintiff must establish that the City intentionally, and without rational

10

basis, treated the plaintiff differently from others similarly situated. . . . A class of one plaintiff must show that the discriminatory treatment 'was intentionally directed just at him, as opposed . . . to being an accident or a random act.'" *N. Pacifica LLC*, 526 F.3d at 486.

It appears to the Court that Emberton is pleading a "class-of-one" claim.[3] However, Emberton fails to plausibly allege that the City intentionally directed code enforcement toward her, rather than that enforcement was random. *Cf. Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011) (finding, on a summary judgment motion, that intent to single plaintiff out in denying his permit could be inferred from officials' awareness of plaintiff's ongoing neighborhood feud and of the rarity of their denial of permits such as plaintiff's). Emberton does not need to allege that the City harbored ill will toward her. *Id.* Nonetheless, she must plead facts to support more than random enforcement. Additionally, the Complaint must include facts indicating that there was no rational basis for the difference in treatment. *See Willowbrook*, 528 U.S. at 565 ("The complaint also alleged that the Village's demand was 'irrational and wholly arbitrary'" and that the Village ultimately reversed course and approved the easement they had allegedly arbitrarily denied). Thus, Plaintiff has not alleged a violation of the Equal Protection Clause.

### c.   Due Process Claim

Emberton also argues that her right to due process has been violated because she has not been given an opportunity to be heard in front of an impartial tribunal for each agency mandate. ECF No. 1-1 at 17. She also references a lack of due process in relation to multiple statements made by agency officials. *Id.* at 7-13. Defendant argues that Emberton does not allege "that the City took any action that deprived her of a procedural or substantive right protected by the due process clause." ECF No. 15 at 28.

---

[3] Emberton cites in her opposition particular classifications, including sexual orientation, disability, and permit-applicant status, but her Complaint provides no facts supporting that the City is treating these classes differently. ECF No. 17 at 24. To the extent that Emberton alleges that the City is discriminating against any of these groups, she needs to include more facts. *Cf. Lazy Y Ranch Ltd.*, 546 F.3d at 590 n.4 (finding plaintiff sufficiently pled discrimination against "conservationists" as a class, including allegation that "[o]ther than in connection with past efforts by conservationists to obtain state grazing leases . . . Defendants have rarely if ever cited [increased administrative costs] to deny other parties a lease.").

11

Under the Due Process Clause of the Fourteenth Amendment: "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A due process claim may be either procedural or substantive. To succeed on either a procedural or substantive due process claim, Plaintiff "must first demonstrate that [s]he was deprived of a constitutionally protected property interest." *Gerhart*, 637 F.3d at 1019. [P]roperty interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, [but] substantive due process rights are created only by the Constitution." *Armstrong v. Reynolds*, 22 F.4th 1058, 1079 (9th Cir. 2022).

The Court finds Emberton has inadequately pled a due process violation, whether she is alleging procedural or substantive due process issues, as Emberton has failed to identify a constitutionally protected interest to which Fourteenth Amendment protection applies. It would seem possible that Emberton is alleging an entitlement to a permit, which has been recognized as a property interest where the permit process places "significant limitations on the discretion of the decision maker" or potentially where a permit was issued, relied upon, and then revoked. *Gerhart*, 637 F.3d at 1019 (quoting *Bd. Of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). *See also FlightCar, Inc. v. City of Millbrae*, No. C 13-5802 SBA, 2014 WL 2753879, at *4 (N.D. Cal. June 16, 2014) (finding a property interest in a permit that was approved and relied upon by plaintiff and then revoked). However, Plaintiff's opposition suggests that she does not claim any entitlement or property interest in permit approval. *See* ECF No. 17 at 21 ("[T]here is no claim of injury nor claim of damages arising from the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization.") (quotations omitted). To the extent that Emberton is alleging a constitutionally protected right to maintain her fence, arbor, and gas line without a permit, the Ninth Circuit has indicated that maintaining property in violation of land use regulations is not a protected interest. *See Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 985 (9th Cir. 2011) ("[T]he Church has not made a legal argument demonstrating that it even had a constitutionally protected property interest, of which it might have conceivably been deprived, in the use of the building without a valid Use Permit and in violation of land use regulations.").

1   Moreover, to the extent Plaintiff alleges an interest in avoiding government intrusion, "there is no

2   general liberty interest in being free from government action." *Nunez v. City of Los Angeles*, 147

3   F.3d 867, 874 (9th Cir. 1998).

4       Accordingly, the Court **GRANTS** the City's Motion with regard to Plaintiff's

5   constitutional claims, without prejudice.  The Court permits Plaintiff leave to amend.  In the event

6   Emberton seeks to amend to allege the City violated her constitutional rights and she is entitled to

7   relief pursuant to 42 U.S.C. § 1983, Emberton would do well to keep in mind that she must

8   identify a City policy or policies which violated her constitutional rights.  *See Monell*, 436 U.S. at

9   694.

### 3. Title II of Civil Rights Act Claim

Title II of the Civil Rights Act of 1964 provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a. First, Emberton has not alleged discrimination "on the ground of race, color, religion, or national origin" and thus has not stated a claim under 42 U.S.C. § 2000a. Second, the Court finds that Emberton has not alleged a "public accommodation" within the meaning of the statute. Emberton argues that the City and its agencies are "public accommodations." ECF No. 17 at 26. However, the Ninth Circuit has interpreted "public accommodations" as "cover[ing] only places, lodgings, facilities, and establishments." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 755 (9th Cir. 1994) (finding that an organization was not a "public accommodation" within the meaning of the statute as it was not connected to an actual place). Emberton has therefore failed to plead a cause of action under 42 U.S.C. § 2000a.

Accordingly, the Court **GRANTS** the City's motion for judgment on the pleadings with regard to Plaintiff's Title II claim, without prejudice. The Court permits Plaintiff leave to amend.

### 4. 31 U.S.C. § 6711(a) Claim

31 U.S.C. § 6711(a) provides that "[n]o person in the United States shall be excluded from participating in, be denied the benefits of, or be subject to discrimination under, a program or

1  activity of a unit of general local government because of race, color, national origin, or sex is the
2  government receives a payment under this chapter." ECF No. 1-1 at 18.  The statute also prohibits
3  discrimination based on age, disability, or religion.  31 U.S.C. § 6711(b).  Emberton does not
4  allege discrimination based on any of the statutorily enumerated bases, and thus she has failed to
5  plead a cause of action.

Accordingly, the Court **GRANTS** the City's Motion with regard to Plaintiff's 31 U.S.C. § 6711(a) claim, without prejudice.  The Court permits Plaintiff leave to amend.

### 5. ICCPR Claim

Emberton brings a cause of action pursuant to the United Nations International Covenant on Civil and Political Rights.  ECF No. 1-1 at 19.  However, there is no private right of action under this treaty.  *See Serra v. Lappin*, 600 F.3d 1191, 1196-97 (9th Cir. 2010) (finding the ICCPR "did not itself create obligations enforceable in the federal courts."); *Bey v. Gascon*, No. 19-CV-03184-WHO, 2019 WL 5191012, at *8 (N.D. Cal. Oct. 15, 2019) (dismissing plaintiff's claim under ICCPR because it is "not enforceable law and does not provide [plaintiff] with a legal claim or remedy.").  Emberton thus cannot maintain a cause of action on this basis.

Accordingly, the Court **GRANTS** the City's Motion with regard to Plaintiff's ICCPR claim, without leave to amend based on futility.

### 6. 18 U.S.C. § 242 Claim

It is well-established that "private individuals lack standing to assert claims for relief based on criminal statutes."  *Redmond v. United States*, 2022 WL 1304472, at *3 (N.D. Cal. May 2, 2022) (listing cases); *see also Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) ("Appellant also claimed relief under 18 U.S.C. §§ 241 and 242.  These criminal provisions, however, provide no basis for civil liability.").  Thus, "[i]ndividuals cannot file criminal charges in the United States District Court.  Rather, criminal proceedings in federal court are initiated by the government, usually through the United States Attorney's Office."  *Candy-Anh-Thu:Tran v. Daniel*, 2017 WL 6513414, at *2 (N.D. Cal. Dec. 20, 2017) (citing *Harbor v. Kim*, 2017 WL 443164, at *4 (C.D. Cal. Jan. 31, 2017) ("The decision to institute criminal proceedings lies within the discretion of the proper state or federal prosecuting authority"); *see also United States v. Nixon*, 418 U.S. 683, 693

14

(1974) (observing that the executive branch has "exclusive authority and absolute discretion to decide whether to prosecute a case"). Although not contested by the Defendant, the Court finds that Plaintiff lacks standing to bring a claim under 18 U.S.C. § 242.

Accordingly, the Court **DISMISSES** Plaintiff's 18 U.S.C. § 242 claim, without leave to amend based on futility. *See Kruska v. Perverted Just. Found. Incorporated.Org*, 2010 WL 4791666, at *8 (D. Ariz. Nov. 18, 2010) ("Because there is not a private right of action or recovery under 18 U.S.C. § 2261A(2), Plaintiff's claim under this statute is dismissed with prejudice.").

### C. State Law Claims

Plaintiff also alleges state law claims for breach of contract, fraud (Cal. Civ. Code §§ 1565-1572), extortion (Cal. Penal Code § 518), violation of the Bane Act, violation of the Unruh Act, violation of the San Francisco Campaign and Governmental Conduct Code § 3.400, and violation of the San Francisco Police Code §§ 3301, 3302, 3305. *Id.* Because it is unclear whether Plaintiff will be able to state a federal claim – and the federal claims provide the basis for this Court's jurisdiction – and because of concerns raised by the City as to the ripeness of Plaintiff's state law claims and concerns of the Court related to comity, the Court does not address Defendant's arguments in favor of judgment on the pleadings for the state claims at this time. *See* 28 U.S.C. § 1367(c) (court may decline supplemental jurisdiction over state law claims if federal claims have been dismissed); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1149 (9th Cir. 2012) ("district court has discretion 'to remand a properly removed case to state court when all federal-law claims in the action have been eliminated and only pendent state-law claims remain' when doing so 'serves the principles of economy, convenience, fairness, and comity.'") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 345, 357 (1988)); *Citizens Legal Enf't & Restoration v. Connor*, 762 F. Supp. 2d 1214, 1234 (S.D. Cal. 2011), *aff'd*, 540 F. App'x 587 (9th Cir. 2013) (declining supplemental jurisdiction based on comity principles after dismissing federal claims and noting "[a] California citizen is suing a California governmental entity under California law. California has an overwhelming interest in adjudicating Plaintiff's claims in its state courts."). The Court thus **DEFERS** determination of the City's Motion as to the state law claims.

However, the Court advises Plaintiff to evaluate Defendant's arguments if Plaintiff chooses to amend her answer and pursue the state claims.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** the City's Motion for Judgment on the Pleadings as to the federal claims and **DEFERS** decision on the City's Motion as to the state claims. The Court **GRANTS** Plaintiff leave to amend her claims based on violation of the U.S. Constitution, violation of Title II of the Civil Rights Act, and violation of 31 U.S.C. § 6711(a). If Plaintiff chooses to amend, her First Amended Complaint shall be filed by March 15, 2023.

**IT IS SO ORDERED.**

Dated: February 15, 2023

THOMAS S. HIXSON
United States Magistrate Judge