UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIHAL EMBERTON,<br>　　　　Plaintiff,<br>　　v.<br>SAN FRANCISCO CITY GOVERNMENT,<br>　　　　Defendant. | Case No. 22-cv-05440-TSH<br><br>**ORDER RE: MOTION TO DISMISS, MOTION TO DISQUALIFY**<br><br>Re: Dkt. Nos. 25, 28 |

## I.　INTRODUCTION

Pending before the Court is Defendant San Francisco City Government's Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). ECF No. 25. Plaintiff filed an Opposition (ECF No. 27) and Defendant filed a Reply (ECF No. 31). Additionally, Plaintiff Emberton has filed a Motion to Recuse the City Attorney's Office. ECF No. 28. Defendant filed an Opposition (ECF No. 32) and Plaintiff filed a Reply (ECF No. 34). The Court finds these matters suitable for disposition without oral argument and **VACATES** the June 15, 2023 hearing. *See* Civ. L.R. 7-1(b). For the reasons stated below, the Court **GRANTS** Defendant's Motion to Dismiss and **DENIES** Plaintiff's Motion to Disqualify.[1]

## II.　BACKGROUND

**A.　Factual Background**

Plaintiff is a San Francisco resident. ECF No. 23 at 2. She purchased her current residence in San Francisco in 2012. *Id.* In 2015, she hired a landscape contractor to build an arbor and a gas fire table in her front yard. *Id.* She completed a building permit for the gas fire table.

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 5, 9.

1  *Id.*  In 2017, she completed a like-for-like repair/replacement of a 4-foot-high fence on her

2  property, which had been there when she moved in.  *Id.*

3        During the fence repair, a neighbor filed a complaint of loud music being played during

4  construction.  *Id.*  The San Francisco Department of Building Inspection ("DBI") issued a Notice

5  of Violation that Emberton needed to obtain a permit for the fence repair.  *Id.*  A building permit

6  application was submitted to DBI, which required a variance hearing with the Planning

7  Department to approve the 4-foot-high fence, even though the property had a 4-foot-high fence

8  prior to Emberton's purchase.  *Id.* at 3.  On July 30, 2019, a variance was granted, and on June 7,

9  2021, a Notice of Special Restrictions was filed with the Assessor-Recorder of the City.  *Id.*

10        On or around October 27, 2021, the Planning Department issued a Notice of Enforcement

11  for a code violation related to the arbor Plaintiff installed.  *Id.*  On November 9, 2021, the

12  Planning Department advised that a variance was required if Plaintiff wished to maintain the

13  arbor.  *Id.* at 3-4.  A variance hearing was held on January 25, 2023, and the project application

14  was placed under advisement.  *Id.* at 4.

15        On November 24, 2021, the Department of Public Works ("DPW") issued a request for a

16  Minor Sidewalk Encroachment permit, related to the fence.  *Id.* at 4-5.  On December 4, 2021,

17  Plaintiff submitted a Minor Sidewalk Encroachment Permit Application.  *Id.* at 5.  On December

18  10, 2021, DPW advised that it was very unlikely the permit for the structure would be approved.

19  *Id.*

20        On or around January 13, 2022, DPW "seized knowledge" of the absence of a public right-

21  of-way on the property and the existence of an arbor, fire table, and light pole.  *Id.*

22        On March 7, 2023, DBI proceeded with abatement proceedings related to the fence.  *Id.* at

23  6.  The violation and enforcement cases remain open as of April 11, 2023.  *Id.*

24  **B.  Procedural Background**

25        On August 26, 2022, Emberton filed a lawsuit in San Francisco Superior Court against the

26  San Francisco City Government ("the City").  ECF No. 1-1.  Emberton alleged "44 causes of

27  action including 18 violations of civil rights, 6 counts of fraud, 5 counts of discrimination, 7

28  counts of extortion, and 8 counts of abuse of power."  *Id.* at 6.  Emberton also alleged that the City

"repeatedly violated 11 city codes and 20 city policies within the City General Plan," and that "these violations are ongoing." *Id.* Plaintiff's causes of action included the following: breach of contract; fraudulent misrepresentation; violations of the Fourth and Fourteenth Amendments; fraud (Cal. Civ. Code §§ 1565-1572); extortion (Cal. Penal Code § 518); violation of 18 U.S.C. § 242; violation of Cal. Civ. Code § 52.1 ("Bane Act"); discrimination claims pursuant to Title II of the Civil Rights Act of 1964, 31 U.S.C. § 6711(a), and Cal. Civ. Code § 51(b) (the "Unruh Act"); violation of the San Francisco Campaign and Governmental Conduct Code § 3.400; violation of the San Francisco Police Code §§ 3301, 3302, 3305; and violation of the United Nations International Covenant on Civil and Political Rights ("ICCPR"). *Id.* at 8-14.

Emberton also filed a "supplemental pleading" in San Francisco Superior Court on August 23, 2022. ECF No. 8. This document was filed on ECF on October 3, 2022. *Id.*

On or around September 22, 2022, Defendant filed an answer. ECF No. 1-2. On September 23, 2022, Defendant removed the lawsuit to this Court. ECF No. 1.

On January 6, 2023, Defendant filed a motion for judgment on the pleadings for all causes of action. ECF No. 15. On February 15, 2023, the Court granted the City's motion as to the federal claims, and deferred decision on the state claims. ECF No. 19.

On March 14, 2023, Plaintiff filed a First Amended Complaint, ECF No. 20, and on March 28, 2023, the City filed a motion for a more definitive statement as well as a motion to dismiss. ECF No. 21. On April 11, 2023, Plaintiff filed a "More Definitive Amended Complaint," which the Court treats as the Second Amended Complaint ("SAC"). It is 78 pages long and difficult to follow. It appears to allege the following claims: 1) violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983; 2) violation of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, and 3) violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"). ECF No. 23. The Court dismissed as moot the City's motion directed at the First Amended Complaint. ECF No. 24.

On April 25, 2023, the City filed the Motion to Dismiss the Second Amended Complaint pursuant to Rule 12(b)(6), which is now before the Court. ECF No. 25. The City also filed a request for judicial notice. ECF No. 26. On May 9, 2023, Plaintiff filed an opposition. ECF No.

1  27.  On May 18, 2023, the City filed a reply.  ECF No. 31.

2  On May 9, 2023, Plaintiff also filed a Motion for Recusal, as in a motion to disqualify the
3  City Attorney's Office.  ECF No. 28.  On May 25, 2023, the City filed an opposition and a request
4  for judicial notice related to Plaintiff's Motion to Disqualify Counsel.  ECF Nos. 32, 33.  On May
5  30, 2023, Plaintiff filed a reply.  ECF No. 34.

### III.    LEGAL STANDARD

**A.    Motion to Disqualify Counsel**

"Matters of disqualification generally are governed by state law." *Cupp v. Smith*, No. 20-CV-03456-PJH, 2020 WL 5407988, at *3 (N.D. Cal. Sept. 9, 2020) (citing *In re Cty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000)).  "[C]ourts have authority to disqualify counsel when necessary in the furtherance of justice." *People ex rel. Clancy v. Superior Ct.*, 39 Cal. 3d 740, 745 (1985).  "[T]he decision to disqualify counsel for conflict of interest is within the trial court's discretion." *Hitachi, Ltd. v. Tatung Co.*, 419 F. Supp. 2d 1158, 1160 (N.D. Cal. 2006) (citing *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980)).  "In considering a disqualification motion, the district court is obligated to make 'a reasoned judgment,' and may resolve disputed factual issues and must make findings supported by substantial evidence." *Dimenco v. Serv. Emps. Int'l Union*, No. C 10-03112 SBA, 2011 WL 89999, at *3 (N.D. Cal. Jan. 10, 2011) (first quoting *Gregori v. Bank of Am.,* 207 Cal. App. 3d 291, 300 (Cal. Ct. App. 1989), *modified* (Feb. 17, 1989); then citing *People ex rel. Dep't. of Corps. v. SpeeDee Oil Change Sys.,* 20 Cal.4th 1135, 1143 (1999)).  "Motions to disqualify counsel are strongly disfavored." *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003).  As such, "[t]he party seeking disqualification bears a 'heavy burden.'" *Dimenco*, 2011 WL 89999, at *3 (quoting *City and Cty. of San Francisco v. Cobra Sols., Inc.*, 38 Cal. 4th 839, 851 (2006)).

**B.    Motion to Dismiss Pursuant to Rule 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim.  A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted).  Rule 8

4

provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV. DISCUSSION

**A.    Requests for Judicial Notice**

    **1.    Motion for Recusal**

The City requests the Court take judicial notice of the following for purposes of its opposition to Emberton's Motion for Recusal:

    1)    Plaintiff's Claim Against the City and County of San

|   |   |   |
|---|---|---|
| 1 |   | Francisco, received on or around February 8, 2022; |
| 2 | 2) | Plaintiff's Claim Against the City and County of San Francisco, received on or around June 21, 2022; and |
| 3 | 3) | Sections of the City and County of San Francisco's Charter. |

ECF No. 33; Exs. A-C. Emberton has not contested Defendant's request.

The Court may take judicial notice of matters that are (1) generally known within the trial court's territorial jurisdiction or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). The Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). Defendant cites Plaintiff's claims received on February 8, 2022, and June 21, 2022, to argue that Plaintiff was aware of the facts she now puts forth as meriting disqualification of the City Attorney's Office. *See* ECF No. 32 at 8. The Court sees fit to take judicial notice of the fact that Plaintiff filed complaints against the City of San Francisco on February 8, 2022 and June 21, 2022 and the allegations raised by Plaintiff in the complaints, but not the truth of those allegations. *See* ECF No. 33, Exs. A-B; *Harris v. Cty. of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012) ("We make take judicial notice of undisputed matters of public record"). The Court also takes notice of the portions of the San Francisco Charter requested by Defendant. *See IMCO, L.L.C. v. Ford*, No. C 11-01640 WHA, 2011 WL 5117265, at *4 (N.D. Cal. Oct. 27, 2011) (taking judicial notice of the San Francisco Charter).

Accordingly, the Court **GRANTS** the City Request for Judicial Notice in relation to the Motion to Disqualify Counsel.

**2.   Motion to Dismiss**

The City requests the Court take judicial notice of the following:

|   |   |   |
|---|---|---|
| | 1) | Department of Buildings Inspection Notice of Violation, dated September 11, 2017; |
| | 2) | San Francisco Planning Notice of Enforcement, dated October 27, 2021; |
| | 3) | San Francisco Public Works Application for Minor Sidewalk Encroachment Permit, dated December 4, 2021; |
| | 4) | Notice of Director's Hearing packet dated February 8, 2023; and |

6

1           5)     Order of Abatement, dated April 12, 2023.

ECF No. 26; Exs. A-E. Emberton has not contested Defendant's request.

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). The Court may take judicial notice of matters that are (1) generally known within the trial court's territorial jurisdiction or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). The Court may also consider documents whose contents are alleged in the complaint, even if not attached, provided the complaint "necessarily relies" on the documents or contents thereof, the document's authenticity is uncontested, and the document's relevance is uncontested. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908.

The Court finds that all of the documents provided by the City are appropriate to take into consideration under the incorporation-by-reference doctrine. Plaintiff refers throughout to a Notice of Violation, which the Court understands to be the September 11, 2017 document. *See, e.g.*, ECF No. 23 at 19, 23. Plaintiff explicitly refers to the October 27, 2021 Notice of Enforcement, and it also appears to form a basis for her claims related to unconstitutional action. ECF No. 23 at 3, 34, 35, 37. Plaintiff explicitly refers to the December 4, 2021 permit application, and it appears to be a basis for her claims related to unconstitutional action. ECF No. 23 at 5, 34. Plaintiff also explicitly refers to, and quotes from, the February 8, 2023, Notice of Director's Hearing, and it appears to underlay her RICO claim as well as her constitutional claims. *See* ECF No. 23 at 42. The Order of Abatement is also fairly characterized as forming the basis of Plaintiff's claims, as her claims pertain to the process and procedure used by the City for issuing

1    violations related to her fence, and Plaintiff refers to the March 7, 2023 hearing which resulted in

2    the Order of Abatement.  ECF No. 23 at 6.  The Court thus **GRANTS** the City's request for

3    judicial notice of all five documents and incorporates them by reference.

4    **B.    Motion to Disqualify the City Attorney's Office**

5    Emberton argues that the City Attorney's Office should be disqualified from representing

6    the City in this action because there is a conflict of interest based on the City Attorney's

7    relationship with the Code Enforcement Program, Plaintiff filed claims based on violations of civil

8    rights with the City Attorney's Office, and San Francisco citizens are a "nonclient third party" the

9    interests of whom the City Attorney's Office is not considering in this action.  ECF No. 28 at 3-5.

10   The City argues that Plaintiff lacks standing, has failed to submit evidence in support of her

11   motion and the motion is barred because of Plaintiff's unreasonable delay.  ECF No. 32 at 2-14.

12   "[A] moving party must have standing, that is, an invasion of a legally cognizable interest,

13   to disqualify an attorney."  *In re Marriage of Murchison*, 245 Cal. App. 4th 847, 851 (2016)

14   (quoting *Great Lakes Constr., Inc. v. Burman*, 186 Cal. App. 4th 1347, 1356 (2010)).  Generally,

15   the party moving for disqualification "must have had an attorney-client relationship with that

16   attorney," or "some sort of confidential or fiduciary relationship must exist or have existed."  *Id.*

17   (quoting *Great Lakes Constr., Inc.*, 186 Cal. App. 4th at 1356).  Where there is no confidential

18   relationship, a minority of courts "have found that non-client litigants may have standing to move

19   for disqualification of counsel in cases where they have a sufficient 'personal stake' in the motion

20   because 'the ethical breach so infects the litigation in which disqualification is sought that it

21   impacts the moving party's interest in a just and lawful determination of her claims.'"  *Concat LP*

22   *v. Unilever, PLC*, 350 F. Supp. 2d 796, 818 (N.D. Cal. 2004) (quoting *Colyer v. Smith*, 50 F. Supp.

23   2d 966, 971 (C.D. Cal. 1999)).  *See also Dimenco*, 2011 WL 89999, at *3, n.4 (collecting cases in

24   this district).  *But see In re Marriage of Murchison*, 245 Cal. App. 4th at 851 ("Although we have

25   found no cases which directly prohibit a party without such a relationship from moving for

26   disqualification, case law shows parties moving for disqualification had standing and the standing

27   was due to the relationship between the moving party and the targeted counsel.").

28   The Court finds that Plaintiff has not provided evidence showing a confidential

8

1 relationship. Plaintiff possibly argues that she has some kind of fiduciary relationship with the
2 City Attorney's Office, or that it owes her a duty as a citizen of San Francisco. ECF No. 28 at 10-
3 11. Such an argument is unfounded. The case cited by Emberton is explicit that an attorney only
4 owes a duty to a nonclient third party, who thus may sue the attorney for malpractice, "when the
5 [attorney's] client's intent to "Do *X*" (that is, to do something to benefit that plaintiff) is clear,
6 certain and undisputed." *Gordon v. Ervin Cohen & Jessup LLP*, 88 Cal. App. 5th 543, 558
7 (2023)*, as modified on denial of reh'g* (Mar. 20, 2023). Emberton does not provide evidence
8 showing a clear and certain intent on the part of the City to do something to benefit Emberton.
9 Further, to the extent Plaintiff argues that she previously filed claims for civil rights violations
10 against the City with the City Attorney's Office, she does not produce evidence that as part of
11 those complaints she shared confidential information or otherwise worked in such a way to
12 understand there was a confidential relationship. *Cf. Cobra Sols., Inc.*, 38 Cal. 4th at 851
13 (disqualifying the City Attorney's Office where the City sued the City Attorney's former client for
14 fraud and the former client argued the City Attorney had pertinent confidential information). As
15 such, the Court does not find Emberton has shown a confidential or fiduciary relationship with the
16 City Attorney's Office to establish standing.
17 Even applying the minority view as to standing, which permits standing where there is a
18 personal stake because an ethical breach so infects the "litigation in which disqualification is
19 sought that it impacts the moving party's interest in a just and lawful determination of her
20 claims,'" the Court does not find that Plaintiff has sufficiently established a conflict of interest or
21 ethical breach on the part of the City Attorney's Office meriting disqualification. *Concat LP*, 350
22 F. Supp. 2d at 818. Plaintiff argues there is a conflict of interest because the City Attorney's
23 Office manages the Code Enforcement Process and thus is self-interested and unable to adequately
24 evaluate the merits of her case. ECF No. 28 at 7-10. The Court disagrees that the City Attorney's
25 Office has an impermissible conflict of interest preventing fair determination of Plaintiff's claims.
26 Plaintiff's argument is largely that the City Attorney's Office is not acting in the best interest of
27 the City because they do not agree that the code enforcement process is unconstitutional and will
28 not engage meaningfully regarding Plaintiff's concerns about its constitutionality. *See* ECF No.

9

28 at 6-7, 10. Such an argument, however, assumes the merits of Plaintiff's claims, namely that the code enforcement processes are unconstitutional, which the Court does not find appropriate to conclude at this juncture. Plaintiff's citation to *People ex rel. Clancy v. Superior Ct.*, is pertinent in that it stands for the proposition that government attorneys may be disqualified for having an interest in a case extraneous to their official function. 39 Cal. 3d 740, 746, (1985) ("When a government attorney has a personal interest in the litigation, the neutrality so essential to the system is violated. For this reason prosecutors and other government attorneys can be disqualified for having an interest in the case extraneous to their official function."). However, Plaintiff's arguments are essentially that the City Attorney's Office is disqualified because of its work as part of its official function.

Further, the City Attorney is not serving a judicial function in the current proceeding such that its evaluation of the merits of the claim impacts Emberton's interest in a just and lawful determination of her claims. Plaintiff's citation to *Ward v. Vill. of Monroeville, Ohio*, 409 U.S. 57 (1972), is unavailing, as that case addressed whether the mayor of a town could also serve as an impartial judge in a proceeding implicating town revenue. Here, the City Attorney's Office is not responsible for making determinations on the merits of Plaintiff's causes of action and thus is not serving the judicial function in this case such that it is occupying "two and seriously inconsistent positions, one partisan and the other judicial," implicating due process concerns. *Id.* at 60 (quoting *Tumey v. State of Ohio*, 273 U.S. 510, 534 (1927)).

Finally, even if there were reason to be concerned that the City Attorney's Office is not impartial, other factors weigh in favor of not disqualifying the City Attorney's Office. "When considering a disqualification motion, courts have considered such factors as the clients' right to counsel of their choice, the attorney's interest in representing a client, the financial burden on the client if required to replace disqualified counsel, and the potential that tactical abuse underlays the disqualification proceeding." *Antelope Valley Groundwater Cases*, 30 Cal. App. 5th 602, 616 (2018). The Deputy City Attorney in this proceeding, Thomas S. Lakritz, attested that the City would be prejudiced if forced to hire outside counsel and pay the additional fees. ECF No. 32-1 ¶ 6. Further, the City Attorney's Office has already invested approximately 300 hours in litigating

1   the case. *Id.* ¶ 5.

2   Accordingly, the Court finds that Plaintiff has not met her high burden in seeking attorney
3   disqualification, and the Motion to Disqualify Counsel is **DENIED**.

4   **C.    Motion to Dismiss Pursuant to Rule 12(b)(6)**

5       **1.    Opposition Page Length**

6   As an initial matter, the City requests in its reply that the Court disregard Emberton's
7   opposition to the City's Motion to Dismiss for violating the Northern District of California Civil
8   Local Rule ("Local Rule") 7-4(b). ECF No. 31 at 1-2.

9   Local Rule 7-4(b) requires that "briefs or memoranda filed with opposition papers may not
10  exceed 25 pages of text." N.D. Cal. Civ. R. 7-4(b). The substance of Plaintiff's opposition to the
11  City's Motion to Dismiss covers roughly seventy-five pages, far exceeding the length permitted by
12  the Local Rules absent court approval. *See* ECF No. 27. Plaintiff is encouraged to review the
13  above-referenced Local Rules, available online, prior to filing further documents to ensure future
14  compliance. Plaintiff is warned that strict compliance with the Civil Local Rules regarding page
15  length will be expected going forward. "Overly long briefs . . . may actually hurt a party's case,
16  making it 'far more likely that meritorious arguments will be lost amid the mass of detail.'" *Elec.
17  Frontier Found. v. C.I.A.*, No. C 09-03351 SBA, 2012 WL 1123529, at *1 (N.D. Cal. Apr. 3,
18  2012) (quoting *Fleming v. Cty. of Kane, State of Ill.*, 855 F.2d 496, 497 (7th Cir. 1988)). The
19  Court will nonetheless consider the arguments in Plaintiff's opposition. The City argues it has
20  been prejudiced because it likely has missed some arguments raised by Plaintiff in her Opposition.
21  ECF No. 31 at 2. The Court appreciates the City's position, but, in light of Plaintiff's *pro se* status
22  and the Court's preference to address Plaintiff's arguments, the Court declines at this juncture to
23  impose sanctions. The Court also notes that much of Plaintiff's arguments are confusing and
24  therefore not of much assistance to Plaintiff, which ameliorates the City's prejudice concerns. *See
25  Procopio v. Conrad Prebys Tr.*, No. 14CV1651 AJB KSC, 2015 WL 4662407, at *8 (S.D. Cal.
26  Aug. 6, 2015) ("Many of Plaintiff's arguments do not require rebuttal by Defendants as they are
27  either inapplicable or not relevant to the Court's analysis.").

28

### 2. *Younger* Abstention

In the Court's prior Order, the Court declined the City's request that the Court dismiss Emberton's federal causes of action under the *Younger* abstention doctrine. ECF No. 19 at 6-7. At the time, the Court explained:

> Based on the information presented, Emberton has had a pending NOV for over five years, and there is no indication that the City has called her before a hearing officer or board regarding the NOV, NOE, or Minor Sidewalk Encroachment Permit. Without more, the Court cannot conclude at this juncture that there is a pending state proceeding upon which the Court would potentially infringe by hearing the current action.

*Id.* at 7. The record before the Court now on Defendant's pending Motion to Dismiss is of a different nature. Based on the SAC, and the documentation provided by the City that the Court finds suitable to incorporate by reference, the Court now sees fit to revisit its prior Order.

"*Younger* abstention remains an extraordinary and narrow exception to the general rule that federal courts have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cook v. Harding*, 879 F.3d 1035, 1038 (9th Cir. 2018) (quotations and citations omitted). Under the *Younger* doctrine, federal courts should abstain from enjoining state proceedings in "three exceptional categories": "(1) 'parallel, pending state criminal proceeding[s],' (2) 'state civil proceedings that are akin to criminal prosecutions,' and (3) state civil proceedings that 'implicate a State's interest in enforcing the orders and judgments of its courts.'" *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 81 (2013)). "In civil cases, therefore, *Younger* abstention is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *Id.* Where these "threshold elements" are present, the federal court then determines "whether the federal action would have the practical effect of enjoining the state proceedings and whether an exception to *Younger* applies." *Id.* "The court may raise abstention of its own accord at any stage of the litigation." *Citizens for Free Speech, LLC v. Cty. of Alameda*, 953 F.3d 655, 658 (9th Cir. 2020).

While this Court previously found that the Notice of Violation pending against Emberton did not amount to a "quasi-criminal enforcement action" because it did not appear as though there was a sufficiently formal proceeding, such as in front of a hearing officer, there have been developments since the party's prior filings. Specifically, DBI issued a Notice of Director's Hearing to Plaintiff on February 8, 2023, and a hearing was held on March 7, 2023. *See* ECF No. 26-4. Further, DBI rendered a decision on April 12, 2023, ordering an abatement related to Plaintiff's fence. ECF No. 26-5. Plaintiff had fifteen days to appeal and 30 days to comply with the Order. *Id.* Plaintiff's SAC alleges that she has incurred $158.10 in an "abatement appeals fee." *See* ECF No. 23 at 32. Emberton's own SAC refers to the March 7, 2023 hearing and states further that the "Violation and Enforcement Cases remain open, the Code Enforcement and Permitting processes are ongoing." ECF No. 23 at 6.

The Court finds these new circumstances change its prior calculus. While previously it looked as though the City had filed a Notice of Violation in 2017, but had otherwise taken little action to constitute an "quasi-criminal enforcement proceeding," now the City has instituted more formal proceedings before a hearing officer, and these proceedings are not yet resolved. The Court finds the present posture of the DBI investigation to be a quasi-criminal enforcement proceeding. *See Citizens for Free Speech, LLC*, 953 F.3d at 657 (finding a quasi-criminal enforcement action in a nuisance abatement case and noting the action included notice to appear before a zoning board); *Herrera v. City of Palmdale*, 918 F.3d 1037, 1045 (9th Cir. 2019) (finding a nuisance abatement action to be quasi-criminal where the state obtained and executed an inspection warrant, issued a Notice and Order to Repair or Abate violations, and then initiated an action in state court for nuisance abatement and receivership); *Lutge v. Harrington*, No. 22-CV-00585-JST, 2022 WL 18401351, at *1 (N.D. Cal. Aug. 2, 2022) (determining that a code enforcement proceeding brought before an administrative hearing officer was sufficient for *Younger* abstention). *Compare Sw. Reg'l Council of Carpenters v. City of Irvine*, No. 821CV00281JLSJDE, 2021 WL 6103550, at *4 (C.D. Cal. Oct. 13, 2021) (finding no enforcement proceeding in a zoning ordinance violation case because, in part, there was no indication that the next step in the city's "'ongoing proceeding' would be a complaint or charge or that enforcement

13

1  would involve a hearing before any state or City administrative body.").

2  The Court also finds that the enforcement proceeding is ongoing. "State proceedings are
3  'ongoing' for the purposes of *Younger* abstention if 'they are initiated "before any proceedings of
4  substance on the merits have taken place in the federal court." Put another way, 'the
5  commencement of state proceedings only ceases to require federal abstention after the federal
6  court proceedings have moved beyond an embryonic stage.'" *Credit One Bank, N.A. v. Hestrin*,
7  60 F.4th 1220, 1225 (9th Cir. 2023) (quoting *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d
8  716, 728 (9th Cir. 2017)). "Relevant factors include the number of conferences held, if discovery
9  was undertaken, any motions ruled on, and the overall amount of time that the district court spent
10 on the case." *Id.* at 1226. The DBI hearing here was initiated on February 8, 2023 by the Notice
11 of Hearing, prior to any hearing on the merits in this federal proceeding. At the time of the Notice
12 of Hearing, this Court had not ruled on the City's Motion for Judgment on the Pleadings, no
13 conferences nor discovery had occurred, and only 18 ECF filings appeared on the docket. The
14 Court finds such circumstances constitute the embryonic stage of the proceeding. Further, while
15 the hearing officer made a determination, Plaintiff indicates she has appealed that decision. *See*
16 ECF No. 23 at 6, 32. *See also Joseph v. City of San Jose*, No. 19-CV-01294-LHK, 2020 WL
17 1031899, at *13 (N.D. Cal. Mar. 3, 2020) (noting that an administrative proceeding related to
18 plaintiff's fence height was "ongoing" where plaintiff was awaiting a hearing officer's decision
19 and then would be resorting to an appeals board).

20 Looking at the next requirement, the Court also concludes that the state proceeding
21 implicates important state interests. *See Citizens for Free Speech, LLC*, 953 F.3d at 657 ("The
22 abatement proceeding also implicated an important state interest, namely the County's 'strong
23 interest in its land-use ordinances and in providing a uniform procedure for resolving zoning
24 disputes.'") (quoting *San Remo Hotel v. City & Cty. of San Francisco*, 145 F.3d 1095, 1104 (9th
25 Cir. 1998)); *Joseph*, 2020 WL 1031899, at *14 ("Courts have routinely held that cities' actions to
26 enforce zoning ordinances implicate important state interests.").

27 Turning to the fourth requirement, the Court also finds the state proceedings provide a
28 sufficient forum for raising Plaintiff's federal constitutional challenges. *See Citizens for Free*

14

1  *Speech, LLC*, 953 F.3d at 657 ("The abatement proceeding also allowed [plaintiff] adequate
2  opportunity to raise its federal challenges; under California law, a litigant may seek judicial review
3  of an adverse decision and, in doing so, may raise federal claims.") (citing Cal. Code. Civ. P. §
4  1094.5); *Ohio C.R. Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 629 (1986) (finding an
5  opportunity to raise claims sufficient where "constitutional claims may be raised in state-court
6  judicial review of the administrative proceeding."). *See also Lebbos v. Judges of Superior Court,*
7  *Santa Clara Cty.*, 883 F.2d 810, 815 (9th Cir. 1989) ("Where vital state interests are involved, a
8  federal court should abstain 'unless state law clearly bars the interposition of the constitutional
9  claims.'") (quoting *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432
10 (1982)). The Court also notes this factor "does not turn on whether the federal plaintiff actually
11 avails himself of the opportunity to present federal constitutional claims in the state proceeding,
12 but rather whether such an opportunity exists." *Herrera*, 918 F.3d at 1046.

13   Finding that the four requirements are met for *Younger* abstention, the Court next
14 considers "whether the federal action would effectively enjoin the state proceedings." *Citizens for*
15 *Free Speech, LLC*, 953 F.3d at 657. "The requested relief must seek to enjoin—or have the
16 practical effect of enjoining—ongoing state proceedings." *ReadyLink Healthcare, Inc.*, 754 F.3d
17 at 758. Emberton is not seeking monetary damages, but rather seeks injunctive relief for her
18 constitutional claims.[2] *See* ECF No. 23 at 75-77. Further, Emberton seeks "[i]njunctive relief to
19 remedy the illegal allegations and convictions (Notices of Violation and Enforcement requiring
20 permits, variances, Abatement proceedings, etc. and DPW emailed mandates) suffered by this
21 Plaintiff and to prevent these illegal allegations and convictions from recurring ever in the future."
22 *Id.* at 77. The Court finds such a request seeks to enjoin, or effectively enjoin, the ongoing
23 abatement proceeding. *See Credit One Bank*, 60 F.4th at 1227 ("If the district court had granted

---

[2] Emberton also seeks "[c]ivil penalties as permitted by law" in her prayer for relief. ECF No. 23 at 77. "Section 1983 does not impose a civil penalty or liquidated damages . . . ." *Lai v. City & Cnty. of Honolulu*, 749 F.2d 588, 590 (9th Cir. 1984) (determining that a state statute, which impacted "any federal statute provid[ing] for an imposition of a civil penalty" did not implicate 42 U.S.C. § 1983 because § 1983 does not impose civil penalties). The Court thus does not consider Plaintiff's request for "civil penalties" to have a bearing on Plaintiff's constitutional claims and interprets these claims as solely pursuing injunctive relief.

1  Credit One's requested relief, it would have enjoined the state proceeding. Our analysis ends
2  there."). Emberton asks the Court to find unconstitutional the City's conduct in investigating and
3  enforcing code violations and to prevent any enforcement to occur. "In other words, Plaintiff
4  specifically asks the Court to enjoin the ongoing enforcement proceeding and to issue declaratory
5  relief that the enforcement proceeding is illegal. This represents the very paradigm of interference
6  with an ongoing state proceeding that *Younger* abstention is designed to prevent." *Joseph*, 2020
7  WL 1031899, at *15.

8        The Court notes that the Ninth Circuit has previously found *Younger* inapplicable where
9  the plaintiff sought monetary damages based on a search of plaintiff's property and the subsequent
10 entry to enforce abatement proceedings. *Herrera*, 918 F.3d at 1049. The Ninth Circuit juxtaposed
11 this Fourth Amendment claim with "a challenge to the state proceeding as a whole or the state's
12 allegedly discriminatory motivation in initiating the action." *Id.* ("Thus, unlike a determination
13 that the civil proceeding itself is constitutionally deficient, a determination that a Fourth
14 Amendment violation occurred and that the Herreras are entitled to monetary damages would not
15 'have the same practical effect as a declaration or injunction on pending state proceedings.'")
16 (quoting *Gilbertson v. Albright*, 381 F.3d 965, 968 (9th Cir. 2004)). Emberton's Fourth
17 Amendment claim, however, appears to seek a determination that the proceeding at large is illegal
18 because the initial investigation and "search" of her property was illegal. Her due process and
19 equal protection claims attack the entire manner in which the City engages in permitting and code
20 enforcement. Further, Emberton is not seeking monetary damages for a violation of her civil
21 rights, but rather injunctive relief. Regardless of the merits of any such claim, it does appear to
22 seek to enjoin the ongoing enforcement action and is not based on a mere "potential for conflict."
23 *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1147 (9th Cir. 2007). The Court believes
24 Emberton's Fourth Amendment claim to be distinguishable from the claim in *Herrera*.

25       Finally, the Court does not find an exception to *Younger*, "such as bad faith, harassment, or
26 flagrant violation of express constitutional prohibitions by the state or local actor," is present.
27 *Citizens for Free Speech, LLC*, 953 F.3d at 657–58.

28       Given the circumstances, the Court finds that dismissal of Plaintiff's constitutional claims

1  is appropriate. *See Beltran v. State of Cal.*, 871 F.2d 777, 782 (9th Cir. 1988) ("Where *Younger*
2  abstention is appropriate, . . . *Younger* abstention requires dismissal of the federal action."). The
3  Court finds the federal causes of action based on constitutional violations should be dismissed
4  without prejudice to refiling after Emberton's code enforcement proceedings have concluded.
5  Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's constitutional claims.

6      **3.**     **RICO Claim**

7  As the Court stated above, Emberton is seeking for the Court to find the City's
8  enforcement conduct to be unconstitutional and thus enjoin the enforcement proceedings. The
9  Court finds therefore that *Younger* merits abstention from deciding the constitutional claims.
10 However, Emberton's RICO claim is more complicated. It appears that Emberton is alleging a
11 RICO claim based on a pattern of unconstitutional conduct by the City. *See* ECF 23 at 41-42.
12 However, RICO does not provide a cause of action for claims based on constitutional violations.
13 "To state a civil RICO claim under 18 U.S.C. § 1964(c), a plaintiff must allege '(1) conduct (2) of
14 an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5)
15 causing injury to the plaintiff's business or property.'" *Abcarian v. Levine*, 972 F.3d 1019, 1027
16 (9th Cir. 2020) (quoting *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996)). "RICO defines
17 'racketeering activity' as any of the predicate acts listed in 18 U.S.C. § 1961(1)." *In re JUUL*
18 *Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 595 (N.D. Cal. 2020).
19 Civil rights violations are not included in the list of predicate acts in 18 U.S.C. § 1961(1), and thus
20 Emberton cannot rely on these violations as predicate acts. *See Bowen v. Oistead*, 125 F.3d 800,
21 806 (9th Cir. 1997) ("Civil rights violations and injury to reputation do not fall within the statutory
22 definition of 'racketeering activity.'"). Accordingly, the Court **GRANTS** the City's Motion to
23 Dismiss Plaintiff's RICO cause of action. The Court **DENIES** Plaintiff leave to amend, as this is
24 Plaintiff's third pleading attempt, and the Court finds amendment would be futile as the Ninth
25 Circuit has held that "'government entities are incapable of forming [the] malicious intent'
26 necessary to support a RICO action." *Pedrina v. Chun*, 97 F.3d 1296, 1300 (9th Cir. 1996)
27 (quoting *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir.
28 1991)).

#### 4. Federal Claims "Deferred"

In her SAC, Emberton states that she seeks to "defer" the Court's grant of leave to amend her claims regarding Title II of the Civil Rights Act and 31 U.S.C. § 6711(a). The Court had previously dismissed the claims without prejudice, as Emberton had not alleged a protected class under either statute. *See* ECF No. 19 at 13-14. Because the Court dismisses Plaintiff's other federal claims without prejudice based on *Younger* abstention, and because Plaintiff has given no indication in her SAC or Opposition of the basis for any renewed claims under Title VII or 31 U.S.C. § 6711(a), the Court does not further address Plaintiff's decision not to include these two additional federal claims as they are not presently before the Court.

#### 5. State Law Claims

The Court previously determined that it would defer decision on the City's Motion for Judgment on the Pleadings as to Plaintiff's state claims because it was unclear that Plaintiff would be able to state federal claims, and the Court had comity concerns regarding the state claims. *See* ECF No. 19 at 15-16. *See also* 28 U.S.C. § 1367(c) (court may decline supplemental jurisdiction over state law claims if federal claims have been dismissed); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1149 (9th Cir. 2012) ("district court has discretion 'to remand a properly removed case to state court when all federal-law claims in the action have been eliminated and only pendent state-law claims remain' when doing so 'serves the principles of economy, convenience, fairness, and comity.'") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 345, 357 (1988)); *Citizens Legal Enf't & Restoration v. Connor*, 762 F. Supp. 2d 1214, 1234 (S.D. Cal. 2011), *aff'd*, 540 F. App'x 587 (9th Cir. 2013) (declining supplemental jurisdiction based on comity principles after dismissing federal claims and noting "[a] California citizen is suing a California governmental entity under California law. California has an overwhelming interest in adjudicating Plaintiff's claims in its state courts.").

Plaintiff did not include her state claims in the SAC, although unlike her "deferred" federal claims, she explains that she did not understand that her state claims were to be included. ECF No. 27 at 64-65. Without being stated in the SAC, the state claims are not presently before the Court. *See Studio Carpenters Loc. Union No. 946 v. Loew's*, Inc., 182 F.2d 168, 170 (9th Cir.

1950) ("Since appellant elected to amend, the amended complaint was substituted in all respects for the original."). The Court appreciates Plaintiff's *pro se* status, and that its prior Order could have provided clearer directions to Plaintiff as to what to include in an amended complaint. The Court also declines to exercise supplemental jurisdiction over Plaintiff's state claims where the federal claims have been dismissed and Plaintiff is a California citizen suing a California governmental entity under California law seeking to adjudicate how local government interprets its local land use regulations. As such, the Court deems it appropriate to permit Plaintiff leave to amend solely to raise her state law claims. Upon Plaintiff's submission of an amended complaint, the Court will remand the action for further proceedings on the state claims.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** Emberton's Motion to Disqualify Counsel. The Court **GRANTS** dismissal of Plaintiff's 42 U.S.C. § 1983 claims without prejudice based on *Younger* abstention. The Court **GRANTS** dismissal of Plaintiff's RICO claim based on Rule 12(b)(6) and **DENIES** leave to amend. The Court **GRANTS** Plaintiff leave to amend solely with regard to her state law claims. Should Plaintiff choose to amend her state law claims, her Third Amended Complaint shall be filed within 30 days of the date of this order.

**IT IS SO ORDERED.**

Dated: June 13, 2023

THOMAS S. HIXSON
United States Magistrate Judge

19